UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 07-CV-98-GFVT

JOHN F. WINKELMAN, JR.                                            PLAINTIFF

**MEMORANDUM OPINION AND ORDER**

JOHN DOE #1, ET AL.                                              DEFENDANTS

Currently before the Court for consideration are the following pleadings:

(1)     The "Motion to Dismiss" [Record No. 17], filed by counsel for the remaining

defendant, the  Postmaster of the Inez, Kentucky, Post Office.

(2)     The "Motion for Reconsideration"  [Record No. 18] filed by John F.

        Winkelman, the *pro se* plaintiff.

(3)     The "Motion to Reinstate Defendants" [Record No. 19], filed by the plaintiff.

(4)     The United States' Response [Record No. 20] to the plaintiff's motions

PROCEDURAL HISTORY

1. The Complaint

        Plaintiff John F. Winkelman is confined in the United States Penitentiary Big-Sandy

(USP-Big Sandy") located in Inez, Kentucky.  On May 8, 2007, the plaintiff filed a *pro se*

prisoner civil rights complaint in which he asserted claims under: (1) the Federal Tort Claims

Act ("FTCA"), Title 28 U.S.C. §§ 1346(b), 2671-2680, and/or (2) 28 U.S.C. § 1331,

pursuant to the doctrine announced in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403

U.S. 388 (1971).  In addition to naming the Inez, Kentucky Postmaster as a defendant, the

plaintiff named several other defendants.[1]

The plaintiff alleged that on an unspecified date, his wife mailed him a package of legal materials relating to his criminal sentence and appeal.  He claimed that the named defendants wrongfully rejected this package of legal materials.  Plaintiff alleged that he repeatedly asked prison staff the protocol for receiving and/or delivering legal mail.  He claimed that prison staff failed to inform him that there was a specific permission form to be completed for receiving such mail and, as a result, he did not have the requisite form on file at the prison.

He alleged that various USP-Big Sandy officials and other BOP officials were responsible for the errors of the mail-room staff.  He asserted that because USP-Big Sandy Defendants failed to explain to him how the incoming legal mail process worked, the USP-Big Sandy mail-room staff rejected his legal mail package.

The plaintiff alleged that his Fifth Amendment right to due process of law was violated when USP-Big Sandy prison staff lost his incoming legal mail. Essentially, he alleged that as a result of his not receiving his legal mail, his criminal sentence was lengthened because he was unable to file the necessary documentation.  Plaintiff demanded $1 million in damages and various forms of injunctive relief, including an Order preventing him from being transferred to another prison in retaliation for filing this claim.

---

[1]

The plaintiff also named the following defendants employed by USP-Big Sandy: (a) Mr. Parker, Counselor, USP-Big Sandy, Unit C-3; (b) Ms. Chance, Unit Manager, USP-Big Sandy, Unit C-3; and (c) Susan Hastings, Warden, USP-Big Sandy; and the following officials of the BOP: (a) Harley Lappin, National Director of the Bureau of Prisons ("BOP"); and (b) K. M. White, Director, BOP Mid-Atlantic Regional Office.

2. The Opinion and Order

    The Court screened the prisoner complaint as required by 28 U.S.C. § 1915A.  On

June 22, 2007, entered a Memorandum Opinion and Order ("the June 22, 2007 Opinion and

Order) [Record No. 8].

    The Court ordered the Postmaster of the Inez, Kentucky, Post Office to file a

Response to the FTCA claims, but noted case law which might potentially prevent the

plaintiff from recovering on his claims of lost mail.  In the June 22, 2007 Opinion and Order,

the Court concluded that: (1) the plaintiff could not assert claims against the defendants in

their official capacities, and (2) the absence of *respondeat superior* liability in civil rights

claims required dismissal of the Fifth Amendment claims against all other named defendants

in their individual capacities.

3. Subsequent Motion and Order

    On July 11, 2007, the plaintiff filed a motion [Record No. 12] under Fed. R. Civ. P.

59(e) seeking reconsideration of the June 22, 2007 Opinion and Order.  He again alleged that

the defendants' collective acts and/or omissions caused him not to receive his important legal

papers from his wife, which adversely impacted the outcome of his criminal case.   The

plaintiff attached thirteen (13) pages of additional documents.  Plaintiff claimed that he

attached the 13 pages of attachments to an earlier response he filed on June 12, 2007. He

claimed that the mail room staff at USP-Big Sandy may have caused these documents not to

be sent to the Court.

    On August 2, 2007, the Court entered an Memorandum, Opinion and Order denying

the plaintiff's Rule 59(e) motion ("the August 2, 2007 Opinion and Order")  [*See* Record No. 13].  The Court analyzed in detail the 13 attachments to the motion, but concluded that they did not persuade the Court to change the Opinion and Order. Summarized, the Court first determined that new attachments demonstrated that the plaintiff had failed to exhaust his claims through the process required by 28 C. F. R § 542. 13-15.  Second , the Court again reiterated its opinion that the doctrine of *respondeat superior* is not an available means by which to assert liability in a *Bivens* Civil rights action.

United States' Motion to Dismiss [Record No. 17]

The United States filed a Motion to Dismiss the plaintiff's claim under the FTCA, concerning the alleged loss of his incoming mail. The United States advances two arguments.

1. Failure to Exhaust FTCA Claim

First, the United States  contends that subject matter is lacking because the plaintiff failed to exhaust his FTCA claim.  It alleges that the plaintiff did not submit the prerequisite administrative claim, required by 28 U.S.C. § 2675(a), prior to the initiation of this action.[2]

---

[2]

Section 2675(a) of Title 28, United States Code, provides in pertinent part:

An action shall not be instituted against the United States for money damages for injury or loss of property or personal injury . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of the agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section . . .

*Id*.

The United States recites the principle established in *United States v. Testan*, 424 U.S. 392, 400 (1976), that lawsuits against it directly for money damages are barred by the doctrine of sovereign immunity, except to the extent that the United States explicitly waives its sovereign immunity and consents to be sued [Motion, Record No. 17-2, p.3].  It correctly states that the exclusive waiver of sovereign immunity for tort claims against the United States, its agencies or employees, is the FTCA. [*Id*].

The United States notes that the sovereign cannot be sued without its consent to be sued, *United States v. Sherwood*, 312 U.S. 584 (1941).  The United States explains that the express terms of its consent to be sued (such as the consent set forth in the FTCA) define and limit a federal court's jurisdiction to entertain tort actions against the United States and its agencies or its employees. [*Id*].

 Under of the FTCA, an injured party harmed by the negligence of the United States is required to present an administrative claim to the appropriate federal agency.  28 U.S.C. § 2675(a).  That agency must be given an opportunity to act on that claim, before the injured party is authorized to bring suit. The agency is allowed six months to adjudicate the claim. *Id*.

The United States cites various cases for the proposition that a valid  administrative claim must present sufficient facts to permit the government to investigate its liability and to assign a value to the claim.  It further asserts that because the consent to a waiver of sovereign immunity must be narrowly construed, a plaintiff must carefully and fully comply with the terms of the consent to waiver [Motion, Record No. 17-2, p. 3].

Citing 39 C.F. R. § 912.5(e)3 and *Blakely v. United States*, 276 F.3d 853, 864 (6th Cir.

2002), the United States contends that an administrative claim is "presented" when the Postal Service "receives from claimant . . . an executed Standard Form 95, Claim for Damage or Injury, or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident." [*Id.*, pp. 3-4].

In its motion, the United States contends that in the instant proceeding,  the plaintiff failed to honor the "presentment" requirement of the statute.  To that end, it offers the Declaration of Thomas Cochran, Jr., Tort Claims Coordinator for the United States Postal Service,  Kentuckiana District.  In his August 27, 2007 Declaration, Cochran declared that based upon the USPS records of which he is the custodian, "There is no record of John Winkelman, Jr. having filed an administrative claim with the Postal Service."[Decl., Record No. 17-3, ¶¶ 6-9].

Citing *McNeil v. United States*, 508 U.S. 106 (1993) and many other cases, the United States argues that the exhaustion requirement of § 2675(a) is jurisdictional in nature and can not be waived.  The government contends that the plaintiff's failure to properly "present" or exhaust his FTCA claim deprives this Court of subject matter jurisdiction over his claims. Given those facts, the government argues that dismissal of the plaintiff's claims is warranted.

2. Postal Service Immunity From Tort Liability

The United States next argues that the Court has no jurisdiction over a claim that the USPS lost a piece of mail.   The United States acknowledges the general rule that the FTCA is the exclusive remedy for persons with claims for damages resulting from the negligent acts

or omissions of federal employees acting within the scope of their office or employment. 28 U.S.C. § 2679(b)(1). In arguing that the plaintiff's claim concerning lost mail is without merit, however, the Government emphasizes the explicit exception to the FTCA's waiver of sovereign immunity which provides that the waiver shall not apply to "any claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matters." 28 U.S.C. § 2680(b).

The United States contends that even assuming evidence existed that the USPS negligently failed to deliver a package to the plaintiff in a timely manner, or did not deliver it at all (which the government denies) the exception set forth in § 2680(b) precludes the plaintiff's FTCA claim. The United States cites numerous cases in support of this argument: *Rowser v. United States Postal Service*, 81 F.3d 161 (Table), 1996 WL 143463, *1 (6th Cir. 1996); *Hudak v. United States Postal Service*, 1994 WL 45134, *2 (E.D. Pa. Feb 15, 1994); *Contemporary Mission, Inc. v. United States Postal Serv*., 648 F.2d 97, 104 n. 9 (2nd Cir. 1981).

Citing *Dolan v. United States Postal Service*, 377 F.3d 285, 288 (3d Cir. 2004), *rev'd on other grounds*, 546 U.S. 491 (2006), the United States contends that the legislative history of 28 U.S.C. § 2680(b) makes clear that Congress intended to protect the USPS from the "potential landslide of lawsuits that might be generated by the unavoidable mishaps incident to the ordinary accepted operations of delivering millions of packages and letters each year." In sum, the United States argues that because that there has been no waiver of sovereign immunity for claims alleging lost mail, that the plaintiff fails to state a valid claim on this

issue.

3. Plaintiff's Motion For Reconsideration [Record No. 18-1]
and Motion to Reinstate Defendants [Record No. 19]

In response to the United States' "Motion to Dismiss," the plaintiff filed two motions, asking the Court: (1) to reconsider its Order to dismiss the remaining defendants and (2) to reinstate those defendants.[3]  Construed broadly, the motion represent the plaintiff's attempt to obtain post-judgment relief under Fed. R. Civ. P. 60(b).

Summarized, the plaintiff argues that the Court improperly dismissed the other defendants to this action without affording him, a pro se litigant, an opportunity to be heard on his claims. He further contends that he has now completed the BOP's administrative exhaustion process 28 C.F.R. § 542.13-15 with regard to his *Bivens* claims against the now dismissed defendants.  To that end, he attached nine pages of documents, relating to the exhaustion process, to his Motion to Reinstate" [Record No. 19-2 and 19-3].

These documents reveal that on August 6, 2007, the plaintiff began the BOP's exhaustion process concerning his *Bivens* claims against the dismissed defendants.  This was four days after entry of the August 2, 2007 Opinion and Order, and over a month after entry of the June 22, 2007 Opinion and Order.  The plaintiff began the exhaustion process by filing his BP-8 "Attempt at Informal Resolution."  He thereafter filed BP-9, BP-10 and BP-11

---

[3]     In the caption of his motion filed as Record No. 18, the plaintiff asks for reconsideration of an Order entered on "October 12, 2007."  The record reflects that no Order was entered in this matter on October 12, 2007.  It appears that the plaintiff seeks reconsideration of the June 22, 2007 Opinion and Order which dismissed the *Bivens* constitutional claims against numerous other defendants named in this action.

8

administrative appeals, all of which are documented in his attachments to Record No. 19.

All of these appeals, including the last one to the BOP Central Office [Record No. 19. p.1], were rejected on the basis of untimeliness [*See also* Record Nos. 19-2, p. 5 (Mid-Atlantic Regional Office) and p.1 (Warden denial)].  In rejecting the three appeals, all of the BOP administrative levels explained that institution requests had to be submitted within twenty (20) days of the complained-of event.  The alleged loss of mail, about which the plaintiff complains in this civil action, occurred sometime in or around December, 2005.

4. United States' Response to "Motion to Reinstate" [Record No. 20]

The United States filed a brief  response to the plaintiff's filings.  The United States argues that because the plaintiff's efforts to administratively exhaust his Bivens claims were not undertaken in a timely manner, they are of no force and effect.

DISCUSSION

1. Standard of Review

The United States has filed a motion to dismiss the remaining FTCA claim concerning the plaintiff's lost mail. Federal Rule of Civil Procedure 12(b) provides for the dismissal of claims and parties for seven listed reasons.  Subparagraph (6) governs motions to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

In considering a Rule 12(b)(6) motion, the court must take well pled allegations as true and construe them most favorably toward the non-movant.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims, if the alleged facts are insufficient to state a claim, or

if on the face of the complaint there is an insurmountable bar to relief.  *See Rauch v. Day &*

*Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978)); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir.

1976).

The United States Court of Appeals for the Sixth Circuit has written of the burden

imposed on a plaintiff upon a defendant's filing of such a motion, as follows:  "To survive a

motion to dismiss . . . , a complaint must contain either direct or inferential allegations

respecting all the material elements to sustain a recovery under some viable legal theory.

Nonetheless, conclusory allegations or conclusions will not suffice to prevent a motion to

dismiss."  *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005) (citations omitted), *cert.*

*denied*, 126 S. Ct. 1911 (2006).

Rule 12(b)(6) continues, in pertinent part, as follows:

> If, on a motion asserting the defense numbered (6) to dismiss for failure
> of the pleading to state a claim upon which relief can be granted matters
> outside the pleading are presented to and not excluded by the court, the motion
> shall be treated as one for summary judgment and disposed of as provided in
> Rule 56, and all parties shall be given reasonable opportunity to present all
> material made pertinent to such a motion by Rule 56.

*Id.*

The plain language of the rule requires that if the Rule 12(b)(6) motion has

attachments, such as the affidavits and medical records herein, which go to the underlying

claim, then the motion "shall" be converted into a motion for summary judgment pursuant to

Rule 56.  *See Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993).  The Court will

apply this standard to the facts and law presented in this matter.

2. Exception Bars FTCA Claim

10

Subject matter jurisdiction is necessary for the exercise of federal judicial power. *Richmond v. International Business Machines Corporation*, 919 F. Supp. 107 (E.D. N.Y. 1996) (citing Fed. R. Civ. P. 12(b)(1)). The plaintiff has the burden of demonstrating subject matter jurisdiction. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996); *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.1990).

Either the court, *sua sponte*, or a party may assert the lack of subject matter jurisdiction at any time during the course of an action. Fed. R. Civ. P. 12(b)(1) and 12(h)(3); *Clark v. Paul Gray, Inc.*, 306 U.S. 583 (1939); *Bell v. Hood*, 327 U.S. 678, 681-82 (1946); *Franzel v. Kerr Mfg. Co.*, 959 F.2d 628, 630 (6th Cir.1992). Once challenged, the burden of establishing a federal subject matter jurisdiction rests on the party asserting the jurisdiction. *Thomason v. Gaskill*, 315 U.S. 442 (1942).

Here, through the sworn Declaration of its USPS representative, the United States first argues that the plaintiff failed to file the requisite administrative claim in accordance with the statute which requires such a claim, 28 U.S.C. § 2675(a). In his responsive filings (two motions) the plaintiff filed nothing which would tend to controvert that claim. Evaluation of the exhaustion claim is not necessary however, because the United States' second argument conclusively disposes of the lost mail claim on the merits.

"Sovereign immunity is jurisdictional in nature. Indeed, the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." ' F. D. I. C. v. Meyer, 510 U.S. 471, 475 (1994) (quoting United States v. Sherwood, 312 U.S. at 586). "[T]he existence of consent is a prerequisite for jurisdiction." *United States v.*

11

*Mitchell*, 463 U.S. 206, 212 (1983).   Thus, to sue the United States, a plaintiff must allege a basis for jurisdiction and a specific statute that waives the government's immunity from suit, and dismissal is appropriate if no statutory waiver is alleged. *Macklin v. United States*, 300 F.3d 814, 819 (7th Cir.2002); *Andrean v. Secretary of U.S. Army*, 840 F. Supp. 1414, 1421 (D. Kan.1993).

Because the FTCA constitutes a waiver of the sovereign immunity of the United States, the Court must strictly construe it in order to prevent expanding the waiver beyond what Congress intended. *See Pipkin v. U.S. Postal Service*, 951 F.2d 272, 275 (10th Cir.1991). The FTCA waiver of sovereign immunity is jurisdictional in nature so that if the action is barred, the Court lacks subject matter jurisdiction over plaintiff's claim. *See id.* "[T]he existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983).

One exception to the FTCA's general waiver of sovereign immunity is for "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." 28 U.S.C. § 2680(b). "As a consequence, the United States may be liable if postal employees commit torts under local law, but not for claims defined by this exception." *United States v. Dolan*, 126 S. Ct. at 256. In short, and as the United States has pointed out in its Motion to Dismiss, the United States has expressly retained its sovereign immunity over claims for negligent handling of the mail. *See* 28 U.S.C. § 2680(b); *Anderson v. United States Postal Serv*., 761 F.2d 527, 528 (9th Cir.1985).

Here, Plaintiff Winkelman's allegations that he did not receive his legal mail package

12

from his wife is a claim arising from "the loss, miscarriage, or negligent transmission of ...

postal matter." 28 U.S.C. § 2680(b). It would not be feasible for the Court to list all of the

cases which hold that the FTCA's exception bars a claim alleging the loss of mail by the

USPS. The Court will mention several cases holding that under similar circumstances, the

court lacked subject matter jurisdiction over the plaintiff's claims. *See*, *e.g.*, *United States v.*

*Dolan*, 126 S. Ct. at 1258 (exception addresses "failings in the postal obligation to deliver

mail," that is, conduct causing the "mail to be lost or to arrive late, in damaged condition, or

at the wrong address." "Illustrative instances of the exception's operation, ... would be

personal or financial harms arising from nondelivery or late delivery of sensitive materials or

information (e.g., medicines or a mortgage foreclosure notice) or from negligent handling of

a mailed parcel (e.g., shattering of shipped china)."); *Georgacarakos v. United States*, 420

F.3d 1185, 1186 (10th Cir.2005) (Items become "postal matter" upon being mailed. If the

plaintiff sustains a loss only because the postal matter is lost or not delivered, then the

"[p]laintiff's claims arise out of the loss of postal matter and are consequently within the §

2680(b) exception ."); *McCullough v. United States*, 110 Fed. Appx. 158, 159, 2004 WL

2029985, *1 (2nd Cir.2004) (Exception in § 2680(b) reaches an invasion of privacy claim

based on "the misdelivery or unauthorized opening of mail."); and *Johnson v. Potter*, 2006

WL 1302120, *3 (D. Kan.,2006) (District court had no subject matter jurisdiction over

plaintiff's allegations that he did not receive certain mail-contest winnings and a credit card,

and that the mail carrier and a third party discussed the contents of his mail box are claims, as

they arose from "the loss, miscarriage, or negligent transmission of ... postal matter.").[4]

In accordance with the statute, 28 U.S.C. § 2680(b), and the foregoing case law, the Court will dismiss the plaintiff's FTCA claim against the United States with prejudice.

3. *Bivens* Claims Not Properly Exhausted

In order to obtain relief from a judgment or order under Fed. R. Civ. P. 60(b), a movant must demonstrate that an order (or judgment) was entered as a result of: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which could not have been discovered in time to move for a new trial under Rule 59(b); or (3) fraud, misrepresentation, or other misconduct of the adverse party.[5] *Feathers v. Chevron U.S.A., Inc*, 141 F.3d 264, 268 (6th Cir. 1998); and *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 541 (6th Cir. 2004) (as a prerequisite to relief in a motion for relief from judgment, a party must establish that the facts of its case are within one of the enumerated reasons contained in the federal rule of civil procedure governing motion for relief from judgment that warrant relief from judgment).

The plaintiff in this case has not satisfied that criteria. On page 4 of the August 2, 2007 Opinion and Order, the Court noted that the plaintiff had initiated the BOP exhaustion

---

[4]

The Court notes that the FTCA exception regarding lost mail applies to non-prisoners, as well as prisoners.

[5]

There are other grounds set forth in Rule 60(b) which serve as a basis for relieving a party from a final judgment, none of which are applicable in this case.

process back in 2006 [See Record No. 13, p.4].[6]   The Court noted on August 2, 2007, that the

plaintiff failed to complete the process by filing either a BP-10 appeal to the Mid-Atlantic

Regional Office or a BP-11 appeal to the BOP Central Office [*Id.*, p.6].[7]

As the United States discussed in its Response [Record No. 20], and as the plaintiff's

own attachments to Record No. 19 clearly reveal, the plaintiff's resumed exhaustion efforts

concerning his *Bivens* claims were too late, and fell short of the mark.   Exhaustion under 42

U.S.C. § 1997e(a) is mandatory and unexhausted claims cannot be brought in federal court.

*Jones v. Bock*, 127 S. Ct. 910, 919 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2382 (2006).

The Supreme Court has emphasized that the exhaustion requirement set forth in 28

U.S.C. found in the PLRA mandates "proper exhaustion," which demands compliance with

prison procedural rules.   *Ngo*, 126 S. Ct. at 2387.   Other district courts, including courts

within the Sixth Circuit, have recently held that even though exhaustion of administrative

---

[6]

Former Warden Hastings' September 29, 2006 denial of the plaintiff's August 26, 2006, BP-9 appeal is found at Record No. 12-2, p. 9.   Hastings set forth detailed reasons why the plaintiff's appeal regarding his claim of lost mail was being denied.   Summarized, former Warden Hastings informed the plaintiff that the USP-Big Sandy mail room rejected the package because it lacked a return address.   She stated that BOP Policy requires a return address on incoming prisoner mail.

[7]

The applicable BOP regulation states as follows:

An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (**BP-10**) to the appropriate Regional Director **within 20 calendar days of the date the Warden signed the response**. An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (**BP-11**) to the General Counsel **within 30 calendar days of the date the Regional Director signed the response.**

28 C.F.R. § 542.15 (Emphasis Added).

remedies need not be pled specifically in the complaint, *sua sponte* dismissal - -for failure to state a claim upon which relief may be granted - - is appropriate on initial review where it is apparent from the face of the complaint that an inmate has failed to exhaust the prison grievance procedure. *Whitaker v. Gannon*, 2007 WL 274439, *2  (S. D. Ohio, September 19, 2007) (Only Westlaw citation currently available); *Spaulding v. Oakland County Jail Medical Staff*, 2007 WL 2336216, *3 (E. D. Mich.2007) (applying *Jones* and dismissing complaint on initial screening for failure to exhaust because it was clear from the face of the complaint that the prisoner had not exhausted his administrative remedies prior to filing suit); *Ghosh v. MeClure*, 2007 WL 400648, at *6, n. 3 (S. D. Tex.2007) ("Nothing in the Supreme Court's decision in *Jones* precludes a reviewing court from raising the issue of exhaustion sua sponte or dismissing the complaint without service on the defendants where the pleadings and the record confirm that a prisoner has violated 42 U.S.C. § 1997e(a) by failing to exhaust his remedies before filing suit."); *Tanner v. Fed. Bureau of Prisons*, 475 F. Supp.2d 103, 105 (D.D.C.2007); *Leary v. A.R.U.S. Conerly*, 2007 WL 1218952 (E. D. Mich. 2007) (lack of exhaustion was obvious from the face of a pleading, requiring the defendant to file a motion to dismiss for failure to exhaust would be a waste of defendants' and the Court's time and resources); and *Funk v. Washburn*, 2007 WL 1747384, *1 (M. D. Fla.2007).

Here, the plaintiff filed what appears to be a timely BP-9 back in August of 2006, and the Warden rejected that request for administrative remedy on the merits.  He did not complete that process, however, within the above stated time frames.  He attempted to resume the BP-10 and BP-11 appeal process only after entry of the August 2, 2007 Opinion

16

and Order.  Under *Ngo*'s analysis, the plaintiff's exhaustion was not "proper" because it was

not timely.   The Court will therefore deny the plaintiff's two motions, construed as motions

for relief from judgment under Fed. R. Civ. P. 60(b).

    4. <u>Court is Required to Screen Prisoner Civil Claims</u>

    The plaintiff takes great issue with the fact that the Court dismissed his *Bivens* claims

*sua sponte* on June 22, 2007.  He argues that he was entitled to greater latitude as *pro se*

plaintiff and that the Court erred in denying him the opportunity either to be heard to allow

his claims to proceed.  The plaintiff is mistaken on that issue.

    District courts are directed by federal statute to conduct a pre-screening of civil claims

filed by prisoners who seek pauper status, especially those claims  concerning any condition

of their confinement.  *See* 28 U.S.C. § 1915A; 28 U.S.C. § 1915(a); and *McGore v.*

*Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997). District courts are required to review

prisoner civil complaints *when they are filed*, to determine if the action is: (I) frivolous or

malicious, or (ii) fails to state a claim upon which relief can be granted.  *See* 28 U.S.C. §

1915(e)(2). The screening process is not discretionary, the statute stating as follows:

> (a) <u>Screening</u> --The court **shall** review, before docketing, if feasible or, in any
> event, as soon as practicable after docketing, a complaint in a civil action in
> which a prisoner seeks redress from a governmental entity or officer or
> employee of a governmental entity.

28 U.S.C.A. § 1915A (Emphasis added) .

    Thus, the plaintiff had no vested right in a hearing prior to the Court's initial

screening of his complaint on June 22, 2007.

CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)     The plaintiff's remaining FTCA claims are **DISMISSED WITH**

**PREJUDICE**.

(2)     The "Motion to Dismiss" [Record No. 17], filed by counsel for the Postmaster

of

the Inez, Kentucky, Post Office is **GRANTED**.

(3)     The plaintiff's "Motion for Reconsideration"  [Record No. 18] and his "Motion

to Reinstate Defendants" [Record No. 19] are **DENIED**.

(4)     This action is **DISMISSED** from the docket of the Court.

(5)     Judgment shall be entered contemporaneously with this Memorandum Opinion

and Order in favor of the named defendants.

This the 19th day of November, 2007.


Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**

18